# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA ANN INFANGER-SCHULZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 16-03207-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

## PROCEEDINGS

On May 10, 2016, Teresa Ann Infanger-Schulz ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits. The Commissioner filed an Answer on August 29, 2016. On May 13, 2017, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and this case remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 44-year-old female who applied for Social Security Disability Insurance benefits on July 30, 2008, alleging disability beginning September 1, 2006. (AR 125.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2006, the alleged onset date. (AR 127.)

Plaintiff's claim was denied initially on October 17, 2008, and on reconsideration on December 11, 2008. (AR 125.) Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") David J. Agatstein on May 4, 2010, in Los Angeles, California.[1] (AR 125.) Plaintiff appeared and testified at the hearing. (AR 125.) Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. (AR 125.) Chip Schwartz, Plaintiff's friend and roommate appeared and testified at the hearing. (AR 125.) Medical experts ("MEs") H. C. Alexander III, M.D., and David Peterson, Ph.D., as well as vocational expert ("VE") Sandra Trost, also appeared and testified at the hearing. (AR 125.)

The ALJ issued an unfavorable decision on May 6, 2010. (AR 125-135.) On April 5, 2012, the Appeals Council vacated the May 6, 2010 hearing decision and remanded the case. (AR 140-141.)

On February 14, 2013, Plaintiff appeared and testified at a hearing held before ALJ Lisa D. Thompson in West Los Angeles, California. (AR 27.) Plaintiff was represented by counsel. (AR 27.) VE Heidi Paul also appeared and testified at the hearing. (AR 27.) A supplemental hearing was held on September 17, 2013. (AR 27.)

The ALJ issued an unfavorable decision on October 17, 2013. (AR 27-39.) The Appeals Council denied review on May 29, 2015. (AR 9-11.)

---

[1] A prior hearing was held in this case on December 17, 2009. The hearing was postponed in order to give the Claimant an opportunity to obtain representation. However, as stated above, the Claimant did not obtain representation and chose to proceed without a representative. (AR 125.)

2

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ erred at step 2.
2. Whether the ALJ erred in the evaluation of Dr. Dalton's opinions.
3. Whether the ALJ erred in determining Plaintiff's credibility.
4. Whether the ALJ erred in the formulation of the RFC.
5. Whether the ALJ erred in the evaluation of lay witness testimony and statements.
6. Whether the ALJ erred in the vocational analysis.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

# THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four,

consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2006, through her date last insured of December 31, 2011. (AR 29-30.)

At step two, the ALJ determined that through the date last insured Plaintiff had the following medically determinable severe impairments: mild degenerative disc disease of the lumbar spine; obesity; anxiety disorder, not otherwise specified; and borderline intellectual functioning. (AR 30-31.)

At step three, the ALJ determined that through the date last insured Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 31-32.)

The ALJ then found that through the date last insured Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) in that she can: lift/carry 50 pounds occasionally and 25 pounds frequently, and stand/walk/sit up to 6 hours in an 8-hour workday. She also can perform simple, repetitive tasks and understand, remember, and carry out simple instructions. She can tolerate occasional changes in the work setting and occasionally interact with supervisors, co-workers, and the general public. (AR 32-37.) In determining the above RFC, the ALJ made an adverse credibility determination. (AR 35.)

At step four, the ALJ found that through the date last insured Plaintiff was unable to perform any of her past relevant work as grocery bagger, kitchen assistant, and material handler. (AR 37.) The ALJ also found that through the date last insured, considering the Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the Claimant could have performed including the jobs of cleaner (hospital) and food service worker (hospital). (AR 38-39.)

Consequently, the ALJ found that Claimant was not disabled at any time from September 1, 2006, the alleged onset date, through December 31, 2011, the date last insured. (AR 39.)

**DISCUSSION**

**I. ANY ERROR AT STEP TWO WAS HARMLESS**

At step two of the sequential analysis, the ALJ found that Plaintiff was determined to have medically determinable physical and mental severe impairments, including borderline intellectual functioning. (AR 30.) Plaintiff also alleges a learning disability and dyslexia that affects her ability to read and write. The ALJ, however, noted in her step two finding that she "considered the limitations related to the alleged learning disability or dyslexia in conjunction with borderline intellectual functioning, which has been determined to be a severe impairment." (AR 31.) Plaintiff contends that the ALJ erred in failing to find Plaintiff's learning disability and dyslexia as severe impairments at step two. The Court disagrees.

It appears that the ALJ did consider Plaintiff's learning disability and dyslexia impairments as part of her borderline intellectual impairment, which she determined to be a severe impairment. (AR 31.) Even if the omission of Plaintiff's learning disability and dyslexia impairments as severe was error, the error was harmless. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (error is harmless when it is "inconsequential to the ultimate nondisability determination"), quoting Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The ALJ did not stop at step two but proceeded with the sequential analysis through step five. Thus, the only way the omission of Plaintiff's learning disability and dyslexia impairments at step two could have prejudiced Plaintiff was if the limitations from those impairments were not

sufficiently considered at step five (RFC).  Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list bursitis as an impairment at step two harmless where ALJ adequately considered limitations posed by bursitis at step four).

Plaintiff contends the ALJ's alleged error was not harmless because the learning disability and dyslexia impairments affect her ability to work at step five.  The ALJ, however, specifically discussed Plaintiff's learning disability and dyslexia limitations in assessing Plaintiff's RFC and in her step five determination that she was not precluded from all work.  (AR 33-36.)  The ALJ found that Plaintiff's borderline intellectual functioning, her learning disability and her dyslexia limited her to simple, repetitive tasks and simple instructions.  (AR 32.)  Plaintiff's arguments about the sufficiency of these RFC limitations is not a step two issue, but a step five issue.

Any error in not listing Plaintiff's learning disability and dyslexia as separate impairments at step two was harmless.

## II. THE ALJ DID NOT FULLY DEVELOP THE RECORD

The ALJ found that Plaintiff has the medically determinable severe impairment of anxiety disorder.  (AR 30.)  Plaintiff exhibited the anxiety symptoms of shakiness and "freezing" on several occasions that were personally observed by a physician, a lay witness, and the ALJ herself.  The ALJ failed to fully and fairly develop the record in regard to the above anxiety symptoms and any limitations these symptoms cause.

### A. Relevant Federal Law

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at 1288.  The ALJ's duty to develop the record is heightened when the claimant is mentally ill.  Tonapetyan, 242 F.3d at 1150.  Ambiguous evidence of the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct "an appropriate inquiry."  Smolen, 80 F.3d at 1288.  The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting questions to them, continuing the hearing, or keeping the record open after the

hearing to allow supplementation of the record. Id. Additionally Social Security regulations provide for the purchase of a consultative examination when information necessary is not available from existing medical records or there is an inconsistency in the evidence or the evidence is insufficient to make a decision on a claim. 20 C.F.R. § 404.1519a.

**B.    Analysis**

The ALJ found that Plaintiff suffers from two medically determinable severe mental impairments: borderline intellectual functioning (which includes Plaintiff's learning disability and dyslexia) and anxiety disorder. (AR 30-31.) The record is adequately developed as to borderline intellectual functioning. Dr. Sherill, based on intensive psychological testing, made the finding of borderline intellectual functioning (AR 32, 34-35, 36, 450-451.) Based on Dr. Sherill's RFC, the ALJ assessed Plaintiff with the ability to perform simple, repetitive tasks and carry out simple instructions. (AR 32.)

The record regarding Plaintiff's severe impairment of anxiety disorder is not fully developed. There are numerous references in the record to anxiety symptoms of shakiness and "freezing" (unable to speak or act) stemming from domestic violence that reasonably could be expected to impede employment. (AR 33, 35, 36, 37, 91.) Plaintiff testified to these symptoms at the hearing, even exhibiting those symptoms at the May 4, 2010 hearing before Dr. David Peterson (AR 66) and before the ALJ at the February 14, 2013 hearing. (AR 90, 91, 93, 99-100.) After observing Plaintiff's symptoms, the ALJ concluded that Plaintiff was disabled, with this finding:

> I find . . . that she experiences periods of freezing where she's unable to move, where she has difficulty word finding, where she shakes when she's anxious and she has difficulty with regard to interacting with crowds of people or various and sundry people.

(AR 99-100.) (The ALJ later reversed her position as discussed below. AR 27.) Also testifying to Plaintiff's symptoms of shakiness and freezing were two lay witnesses, her domestic violence counselor Raquel Ortiz (AR 37) and a friend Jeff Schultz who personally observed the symptoms. (AR 69-71.) Dr. Fimi Azizian recorded Plaintiff's reporting of these symptoms from

8

January 2010 to July 2010.  (AR 35, 36-37, 530-555.)  Testifying medical expert Dr. Charles Dalton, a clinical psychologist, opined that Plaintiff equaled Listing 12.06 for Anxiety Related Disorders and was disabled due to anxiety, including PTSD, from domestic violence since at least January 2010 and probably since 2008.  (AR 37, 112-117.)

Nonetheless, the ALJ rejected the above evidence for reasons both valid and not, all of which miss a salient issue: the ALJ's duty to fully develop the record.  The ALJ rejected Dr. Azizian's opinion that Plaintiff was disabled since June 2009 (AR 555) because his progress notes contain only descriptions of the Plaintiff's complaints and little or no objective clinical signs.  (AR 35, 37.)  The ALJ faults the opinions of both Dr. Azizian and Dr. Dalton because there are no medical treatment records after July 2010.  (AR 35, 37.)  She also questions Plaintiff's credibility because there was no mental health treatment before January 2010 or after July 2010.  (AR 35.)  Yet the anxiety symptoms caused by domestic violence may not have occurred before 2010.  Plaintiff, moreover, testified that she lost her GAIN funding and thought the Verdugo Mental Health clinic had closed in 2010.  (AR 90, 94.)  Although an ALJ can rely on unexplained gaps in treatment to discount a claimant's credibility, here Plaintiff offered explanations that the ALJ failed to discuss.  See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (ALJ cannot discount credibility based on gaps in medical treatment where good reasons like inability to pay are proffered).  Also, the ALJ should not fault someone with borderline intellectual functioning because of gaps in medical treatment.  Additionally, the Commissioner in her portion of the Joint Stipulation creates a false issue in arguing that the ALJ was entitled to prefer Dr. Sherill's opinion over Dr. Dalton's.  Dr. Sherill only addressed Plaintiff's borderline intellectual functioning, learning disability, and dyslexia.  Dr. Sherill did not address Plaintiff's anxiety disorder because it had not manifested itself yet.

The ALJ found that Plaintiff had the medically determinable severe impairment of anxiety disorder (AR 30), which was no doubt based on the medical opinions of Dr. Azizian and Dr. Dalton who diagnosed that Plaintiff suffered from anxiety, including PTSD.  The record, moreover, contains convincing evidence that Plaintiff's anxiety symptoms include shakiness and freezing.  Dr. Peterson, Jeff Schultz and the ALJ herself all <u>personally observed</u> these

9

symptoms. Dr. Dalton who reviewed the entire record was fully aware that Plaintiff had exhibited these anxiety symptoms in rendering his opinion. Also, the ALJ faults Dr. Dalton for making the assumption that Plaintiff's anxiety symptoms due to PTSD extend back to 2008, but Dr. Dalton's opinion about disability from 2010 forward was not based on assumptions but on symptoms personally observed by Dr. Peterson, Jeff Schultz, and the ALJ. (AR 37, 117.) Curiously, the ALJ does not deny Plaintiff's anxiety symptoms of shakiness and freezing. She also does not address how these symptoms might affect Plaintiff's ability to perform work. The ALJ merely states in conclusory terms that the objective medical evidence does not warrant additional non-exertional limitations beyond those established in the ALJ's RFC. (AR 35.)

The ALJ's conclusion, however, is not an adequate response to the clear evidence of anxiety symptoms <u>personally observed</u>. If the ALJ was concerned that there was insufficient medical evidence, then she was obliged to seek such evidence by ordering a CE, particularly in regard to a claimant with cognitive limitations already acknowledged by the ALJ. The record is not adequately developed to make a decision regarding appropriate limitations for Plaintiff's anxiety symptoms of shakiness and freezing.

Thus, the Court holds that the ALJ failed to fully and fairly develop the record. On remand, the Commissioner should order a CE examination that addresses Plaintiff's anxiety symptoms. The Court cannot resolve the other issues presented until the record is fully developed.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this case for further proceedings in accordance with this Memorandum Opinion and Order and with law.

DATED: <u>November 22, 2017</u>       */s/ John E. McDermott*
                                                        JOHN E. MCDERMOTT
                                       UNITED STATES MAGISTRATE JUDGE